# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

CARAVAN FACILITIES MANAGEMENT
LLC, a Michigan Limited Liability Company,

      Plaintiff,
                                  CASE NO.: 22- _____

                                           HONORABLE _____

v.

SBM MANAGEMENT SERVICES, LP, a
Delaware Corporation, DEBBIE BLACK, LAMONT RICHIE,
MIKE MOORE, PAT MURTHA, DONALD HAWKINS,
WILLIAM OGLETREE, SARAH RODRIGUEZ,
STEPHANIE WOGERMAN, STEVE HARRIS,
JAMES DAVIS, AND CHRISTY TALBOT, individually,

      Defendants.

_____

THOMAS R.PAXTON (P36214)
DANIEL G. COHEN (P41735)
MARCUS L. McCRAY (P84018)
OGLETREE, DEAKINS, NASH
SMOAK & STEWART, PLLC
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
T: 248.593.6400
F: 248.283.2925
thomas.paxton@ogletree.com
daniel.cohen@ogletree.com
marcus.mccray@ogletree.com
*Attorneys for Plaintiff*

_____

## <u>PLAINTIFF'S VERIFIED COMPLAINT</u>

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint in this Court, nor has any such action been previously filed and dismissed after having been assigned to a judge.

NOW COMES, Plaintiff Caravan Facilities Management, LLC ("Caravan FM"), by and through its attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, PLLC, and for its Verified Complaint against Defendant SMB Management Services, LP ("SBM"), states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff, Caravan Facilities Management, LLC ("Caravan FM") is a Michigan Limited Liability Company with its principal office in the State of Michigan, County of Saginaw, at 1400 Weiss Street, Saginaw, Michigan 48602.

2.     Defendant, SBM is a Delaware Corporation conducting business throughout the State of Michigan and is a direct competitor of Plaintiff in nationwide markets and service lines.

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 29 U.S.C. § 185.

4.     Venue is proper in the Northern Division for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claim occurred in the Northern Division for the Eastern District of Michigan. Namely, all corporate interactions between Caravan FM, its employees, its clients,

its competitors, and the unions it bargains with are out of Caravan FM's principal office in Saginaw, Michigan.

5.     As Caravan FM seeks equitable relief and an amount in excess of $75,000, jurisdiction is proper with this Honorable Court.

## GENERAL ALLEGATIONS

6.     Caravan FM repeats and incorporates the foregoing allegations as if fully restated herein.

7.     Caravan FM's business is providing janitorial service, building maintenance, as well as integrated facility management and business support services for businesses throughout the State of Michigan, the United States, and internationally.

8.     Caravan FM is a certified minority-owned business that was founded and has always maintained its corporate headquarters in Saginaw County, Michigan.

9.     Defendant SBM is a direct competitor to Caravan FM, providing identical services to similar customers and clients throughout the State of Michigan, the United States, and Internationally.

10.     Caravan FM and SBM both provide janitorial, building maintenance and integrated facility management services to Stellantis (formerly FCA US, LLC), General Motors and Ford Motor Company, amongst other clients.

11.    Caravan FM has developed and maintains specific competitive assets including proprietary methods, processes, programs and information, which its operations and site managers use to effectively and profitably provide service to its customers.

12.    Caravan FM also relies on its trade secrets such as information relating to customers specific needs, contacts, pricing, strategies and goodwill within the industry.

13.    Caravan FM takes specific and definitive measure to protect the confidentiality of this proprietary information and its trade secrets.

14.    As a result, Caravan FM's operations and site managers have agreed to specific restrictive covenants as material terms of their employment with Caravan in the form of Confidentiality, Non-Disclosure and Non-Compete Agreements.  These covenants include a promise not to compete with Caravan FM or provide services on behalf of or for a "Competing Business" at any worksite within a 50 mile radius of any site the employee worked at while employed by Caravan FM or perform services for a customer for whom they provided services or to whom they had responsibilities while employed by Caravan FM.   Additionally, the covenants include promises not to solicit Caravan FM customers, potential customers and or employees.  (Exhibit A).

15.    Specifically, the managers each acknowledged that they were privy to

4

Caravan FM's trade secrets and other proprietary, non-public information and agreed "not to disclose any Confidential Information, directly or indirectly, to anyone, nor to use it in any way, either during [their] employment with us or at any time after [their] termination, except as may be required in the course of performing services for Caravan FM or if we give our prior written consent."  Exhibit A at 1.b.

16.    In addition, the managers each acknowledged that they occupy a position of trust and confidence and will have access to confidential information and, as such, agreed that "[d]uring [their] employment and if [their] employment is terminated for any reason, including resignation by [them] or termination by us, with or without cause, then for a period of one (1) year immediately following [their] termination, [they] agree that [they] will not:

i.     Solicit, interfere with or attempt to entice away from us, any employee of ours; or

ii.    Encourage, suggest or otherwise assist any other employee of ours in violating any confidentiality, non-disclosure or non-compete agreement; or

iii.   Solicit, interfere with or attempt to entice away from us, any of the business performed by Caravan FM (or business for which Caravan FM has an outstanding bid, quote or proposal) for yourself or on behalf of a "Competing Business", or

iv.    Perform services for a customer for whom you provided services or to whom you had responsibilities while employed by Caravan FM within the last two years of your employment; or

v.     Compete with Caravan FM or provide services on behalf of or for a "Competing Business" at any Worksite within a 50-mile radius of any site you worked while employed by Caravan FM.

The agreement specifically defines **"Compete" or "Competing"** as "(i) to engage in a business entity of any description or business activities that are either (A) substantially similar to, (B) offers the same or similar services, or (C) is competitive with the business engaged in by Caravan FM (or business for which Caravan FM has an outstanding bid, quote, or proposal), including any changes in and expansions of such business reasonably anticipated; (ii) to consult with or assist any person or entity of any description in any capacity to engage in a competing business; or (iii) to own any interest in or to organize a corporation, partnership or other business entity of any description, which engages in a competing business."

(Exhibit A at 2.b.) (Emphasis in original)

17.    The janitorial and maintenance work for approximately 50 facilities throughout the State of Michigan and the United States performed by Caravan FM for FCA/Stellantis is the subject of a collective bargaining agreement between Caravan FM and the United Automobile Workers International Union FCA Department ("UAW") union governing the period from March 25, 2018 until March 25, 2023.  A copy of the CBA is attached as Exhibit B hereto.

18.    The Caravan FM-UAW CBA contains the following successor clause:

In the event of any change in the ownership, Management or operation of any of the Company operations covered by this agreement, by sale, assignment, transfer, lease, merger, consolidation or other change, and provided in the instrument affecting the same, that **the purchaser, assignee, transferee, lessee, or other appropriately designated party, as the case may be, shall be fully bound by all of the terms and conditions of this agreement, and that all rights and benefits of employees deriving from this agreement, or any previous agreement, shall remain in full force and effect as against**

6

**such successor, transferee or other appropriately designated party.  Should an account be won or lost by another provider during the terms (sic) of this agreement, it is agreed that each party's responsibility will be prorated accordingly based on the date of the transfer of the business.**

**For example, if the change occurs on July 1, the Company will be responsible for 50% of the benefits attributable to that year and the successor, transferee or other appropriately designated party will be responsible for the other 50%. Benefits that are spread over the life of the contract rather than on an annual basis will be prorated for the term of the contract**.

(Exhibit B at pages 25-26) (Emphasis supplied)

19.     The CBA provided that the employer, then Caravan FM, would pay ratification bonuses in excess of $3 Million if the employees ratified the five year CBA.  (Exhibit B at page 34).

20.     Caravan paid the entire ratification bonus for the five-year life of the CBA.

21.     On or about November 17, 2021, Caravan was notified that SBM would replace Caravan FM on or before February 1, 2022 at a number of sites covered by the CBA.

22.     SBM has since hired Caravan FM's union-represented employees at the Stellantis site, most of whom received the benefit of the ratification bonus.

23.     SMB is the factual and legal "successor" to Caravan FM at those sites, consistent with the terms of the CBA.

7

24.     Caravan FM has requested that SBM pay its *pro rata* share of the ratification bonus to no avail.

25.     As SBM has begun its transition as successor to Caravan FM at these certain Stellantis sites, SBM has made job offers to a large number of Caravan FM's site and operations managers, who are not covered by the CBA.

26.     Specifically, Defendants Debbie Black, Lamont Richie, Mike Moore, Pat Murtha, Donald Hawkins, William Ogletree, Sara Rodriguez, Stephanie Wogerman, Steve Harris, James Davis, and Christy Talbot ("Individual Defendants") have, after being solicited by SBM, accepted employment with SBM and intent to and or are providing services to SBM, in violation of their restrictive covenants.

27.     On January 12, 2022, Caravan FM, through its counsel, advised SBM that the management employees it was soliciting were subject to valid restrictive covenants, that Caravan was not willing to waive its restrictive covenants with its managers and that it would not tolerate any interference with its contractual and business agreements.  Exhibit C.

28.     On or about January 18, 2022, after its receipt of Caravan FM's January 12, 2022 demand, SBM ignored the demand to cease and desist unfair and illegal competition and interference with the contractual obligations of the Individual

Defendants continued to solicit and interfere with Caravan FM's contractual relationship with its managers.

29.    On January 24, 2022, each of the individual employees were advised of the restrictive covenants and that their employment at SBM was a breach of their contractual obligation.  (See Exhibit D).

30.    On January 25, 2022, SBM responded to Caravan FM's January 12, 2022 demand and did not agree to respect Caravan FM's restrictive covenants. Instead, since that time, SBM has shown nothing but indifference towards Caravan FM's contractual relation with its managers and efforts to protect its legitimate competitive business interests, and has continued to undermine and interfere with Caravan FM's contractual and business interests.

31.    On January 26, 2022, Caravan FM learned that SBM had begun making offers of employment to lure other operations managers at other clients' facilities, including General Motors, away from Caravan FM's employment.

32.    SBM's conduct has, and will, continue to cause irreparable damage to Caravan FM because of the disclosure of its confidential information to a direct competitor, loss of customer and business goodwill, and unfair competition.

### COUNT I
### BREACH OF CONTRACT – INDIVIDUAL MANAGERS

33.    Caravan FM repeats and incorporates the foregoing allegations as if fully restated herein.

34.     The Individual Defendants each voluntarily executed a Confidentiality, Non-Disclosure and Non-Compete Agreement with Caravan FM that included provisions limiting their post-employment conduct.  (Exhibit A).  The Non-Compete and Confidentiality Agreement contains non-competition, non-solicitation and confidentiality provisions, which are reasonable and appropriate.

35.     The non-compete and non-solicitation prohibitions do not prevent the Individual Defendants from working or securing a new job that is not competing with Caravan FM.

36.     Each of the Individual Defendants has materially breached their Non-Compete and Confidentiality Agreement particularly the covenant to maintain confidentiality and not compete with Caravan FM or solicit its customers.

37.     Each of the Individual Defendants' conduct in violation of their Non-Compete and Confidentiality Agreement has and will result in damages, including but not limited to, loss of business opportunities and loss of goodwill.

38.     Each of the Individual Defendants' conduct constitutes a violation of their Non-Compete and Confidentiality Agreement and undermines, and impairs Caravan FM's competitive business interests and goodwill, for which money damages are inadequate.

39.     As a direct and proximate result of each of the Individual Defendants' acts, Caravan FM has suffered and will continue to suffer irreparable harm in the manner specified in the Prayer for Injunctive Relief, set forth herein.

40.     Caravan FM is entitled to damages, costs and attorneys' fees, and to preliminary and permanent injunctive relief against further breaches of the Non-Compete and Confidentiality Agreement.

## COUNT II
## DECLATORY JUDGMENT – SBM

41.     Caravan FM repeats and incorporates the foregoing allegations as if fully restated herein.

42.     Caravan FM and SBM are both party to a written instrument, namely the CBA, which outlines the legal rights and duties of the parties.

43.     Caravan FM has paid the entire ratification bonus upfront for the term of the CBA.

44.     SBM is now availing itself of the benefits of the bargained for CBA and paid ratification bonus.

45.     The CBA requires that SBM, in taking over the facility management, provide the *pro rata* share of the ratification bonus.

46.     SBM has hired much of Caravan FM's workforce at the various plants they are now providing service to, and have, upon information and belief, assumed

the CBA and assured Stellantis and the union that it intends to abide by the provisions of the CBA.

47.    SBM is a successor and/or perfectly clear successor and is bound by the provisions of the CBA.

48.    Caravan FM is entitled to a Declaratory Judgment that SBM is liable for its *pro rata* share of the ratification bonus that Caravan FM has paid in full up front.

49.    This Court may and should declare that SBM is a successor and/or perfectly clear successor to Caravan FM as to the obligations to reimburse the *pro rata* portion of the ratification bonus according to 28 U.S.C. 2201 *et seq*.

<u>**COUNT III**</u>
<u>**BREACH OF CONTRACT – SBM**</u>

50.    Caravan FM realleges and incorporates the foregoing allegations as if fully restated herein.

51.    Caravan FM and the UAW entered into an enforceable CBA on or about March 25, 2018.

52.    SBM is a successor to the contract.

53.    SBM has held itself out to Caravan FM's former employees, the UAW, and Stellantis as a perfectly clear successor, upon information and belief, both abiding by the terms and conditions of the CBA and assuring the aforementioned parties of its intention to abide by the CBA.

54.     As a perfectly clear successor, SBM is obligated to pay its prorated share of the ratification bonus paid in full by Caravan FM.

55.     SBM's failure to pay its prorated share constitutes a material breach of the CBA.

56.     29 U.S.C. § 185 permits suits for violation of contracts between an employer and a labor organization, to be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

57.     As a direct and proximate result of SBM's breach, Caravan FM has suffered contract damages in the amount of $702,000.

58.     Caravan FM is entitled to damages in the amount of $702,000 together with interest, costs and attorneys' fees.

## COUNT IV
## COMMON LAW INDEMNIFICATION – SBM

59.     Caravan FM realleges and incorporates the foregoing allegations as if fully restated herein.

60.     Caravan FM has complied with the CBA by paying out ratification bonuses in excess of $3 Million.

61.     As such, Caravan FM has engaged in no wrongful conduct under the CBA concerning the ratification bonus and is free from fault.

62.    It would be inequitable to require Caravan FM to pay the entire ratification bonus where Caravan FM is not receiving the benefit of the full term of the CBA.

63.    SBM, which is receiving the benefit of the remaining term of the CBA, should be required to pay its fair share of the ratification bonus in accordance with the successor clause in the CBA.

64.    Caravan FM is entitled to indemnification by SBM in the amount of $702,000 together with interest, costs and attorneys' fees.

**COUNT V**
**CONTRIBUTION – SBM**

65.    Caravan FM realleges and incorporates the foregoing allegations as if fully restated herein.

66.    Caravan FM has paid more than its *pro rata* share of the ratification bonus set forth in the CBA.

67.    SBM is a successor and perfectly clear successor.

68.    SBM has agreed either explicitly or implicitly to be bound by the CBA and thus is liable for the ratification bonus along with Caravan FM.

69.    SBM has not made any contribution to the ratification bonus despite the language in the successor provision of the CBA.

70.    Caravan FM is entitled to contribution in the amount of $702,000 together with interest, costs and attorneys' fees.

14

## COUNT VI
## COMMON LAW CONTRIBUTION – SBM

71.     Caravan FM realleges and incorporates the foregoing allegations as if fully restated herein.

72.     SBM is a successor and perfectly clear successor.

73.     SBM has agreed either explicitly or implicitly to be bound by the CBA and thus is liable for the ratification bonus along with Caravan FM.

74.     Caravan FM has paid more than its *pro rata* share of the ratification bonus set forth in the CBA.

75.     SBM has not made any contribution to the ratification bonus despite the language in the successor provision of the CBA.

76.     Caravan FM is entitled to contribution in the amount of $702,000 together with interest, costs and attorneys' fees.

## COUNT VII
## UNJUST ENRICHMENT – SBM

77.     Caravan FM realleges and incorporates the foregoing allegations as if fully restated herein.

78.     Caravan FM has paid the entire ratification bonus for the life of the CBA, and through that has bought industrial peace, stability, and client satisfaction.

79.     SBM, by taking over plants, which the CBA covers, enjoys the fruits of an agreement negotiated and ratified by the employees at the expense of Caravan FM, including industrial peace, stability and client satisfaction.

80.     SBM has refused to pay its *pro rata* share of the ratification bonus despite language in the successor provision of the CBA.

81.     SBM has honored or indicated its intent to honor other provisions of the CBA, and has informed its employees, the union, and Stellantis that it intends to keep all terms and conditions the same, becoming a perfectly clear successor.

82.     SBM will be unjustly enriched if it is allowed to retain the benefit of Caravan's costly and time-consuming bargaining process and ratification bonus, without paying its share of the benefit.

83.     Further, upon information and belief, SBM was awarded the work at some of the Stellantis covered facilities, in part because of SBM's assumption or agreement to assume the terms of the CBA.

84.     In order to prevent the unjust enrichment of SBM, Caravan FM is entitled to the *pro rat*a share of the benefit that SBM is and will continue to enjoy in the amount of $702,000, together with interest, costs, and attorneys' fees.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH CONTRACT – SBM

85.     Caravan FM realleges and incorporates the foregoing allegations as if fully restated herein.

16

86.     Caravan FM has a valid and binding contract with several site and operations managers, including Debbie Black, Lamont Richie, Mike Moore, Pat Murtha, Donald Hawkins, William Ogletree, Sarah Rodriguez, Stephanie Wogerman, Steve Harris, James Davis, and Christy Talbot, which prohibit them from working for a direct competitor.  See *e.g.*, Exhibit B.

87.     On or about January 12, 2022, SBM became aware of the contracts between Caravan FM and the aforementioned individuals and that the contracts prohibited them from working in competition with Caravan FM.  (Exhibit C).

88.     Despite SBM's knowledge of the contracts between Caravan FM and the aforementioned individuals, SBM has shown indifference towards Caravan FM's contractual and business interests by failing and refusing to acknowledge Caravan FM's interests or provide assurance it will respect those interests and continuing to solicit and offer employment to Caravan FM managers.

89.     To date, job offers made to the aforementioned individuals have not been withdrawn.

90.     Upon information and belief, some or all of SBM's job offers have been accepted by the aforementioned individuals in violation of their respective restrictive covenants.

91.    The above-described wrongful acts by SBM induced a breach of, or otherwise interfered with, the contract between Caravan FM and the aforementioned individuals.

92.    As a direct and proximate cause, Caravan FM has and will suffer damages and irreparable harm and is entitled to immediate injunctive relief preventing SBM from employing the aforementioned individuals in violation of their respective contracts.

93.    Caravan FM is entitled to damages and to preliminary and permanent injunctive relief against further breaches of its Confidentiality, Non-Disclosure and Non-Compete Agreement.

## COUNT IX
## INJUNCTIVE RELIEF

94.    Caravan FM realleges and incorporates the foregoing allegations as if fully restated herein.

95.    The wrongful conduct of the Individual Defendants and SBM, as described herein has caused, and will continue to cause, irreparable injury to Caravan FM, and its goodwill.

96.    Aside from the Non-Compete and Confidentiality Agreement, Caravan FM has no adequate remedy at law because monetary damages will not completely compensate Caravan FM for the loss of its goodwill.

97.     If a preliminary and permanent injunction is not entered, Caravan FM will suffer an unfair, permanent commercial disadvantage in that its own confidential and proprietary information will be used against it unfairly on behalf of a direct competitor.

98.     This Court is authorized to enforce the Non-Compete and Confidentiality Agreement in the form or preliminary and permanent injunctive relief to the extent it is reasonable.

99.     The harm to Caravan FM caused by not issuing injunctive relief will substantially outweigh any harm to SBM if injunctive relief is issued.

100.    Further, the public interest will be served by enjoining and restraining SBM's improper conduct in violation of the Non-Compete and Confidentiality Agreement.

101.    Caravan FM will continue to be irreparably harmed unless and until SBM is preliminarily and permanently enjoined from the improper actions described herein.

WHEREFORE, Plaintiff, Caravan Facilities Management, LLC respectfully requests that this Honorable Court enter an order and judgment granting the following relief:

A.     Enjoin each of the Individual Defendants: Debbie Black, Lamont Richie, Mike Moore, Pat Murtha, Donald Hawkins, William Ogletree, Sarah

Rodriguez, Stephanie Wogerman, Steve Harris, James Davis, and Christy Talbot from engaging in conduct contrary to the terms of the Confidentiality Non-Disclosure and Non-Compete Agreements; specifically working for or providing service to SBM during the one (1) year period from the date of entry of this Court's Order.

B.      Declare SBM the successor of Caravan FM with respect to the CBA provisions of the ratification bonus.

C.      Enjoining SBM from continuing to interfere with the aforementioned individuals' Confidentiality, Non-Disclosure and Non-Compete Agreements by offering work or employing said individuals during the one (1) year period from the date of entry of this Court's Order.

D.      An Order awarding Caravan FM its actual damages for the *pro rata* portion of the ratification bonuses already paid by Caravan FM, but enjoyed by SBM.

E.      An Order awarding Caravan FM actual, exemplary, and compensatory damages for such actual losses and any benefit derived by the employment of Caravan FM's former employees by SBM as reasonably ascertainable and determined to be suffered by Caravan from the aforesaid wrongful actions.

F.      An Order awarding Caravan FM attorneys' fees, costs, and interest.

G.      An Order granting Caravan FM such other relief as the Court may deem just and proper.

Respectfully submitted,

s/ Thomas R. Paxton
THOMAS R. PAXTON (P36214)
DANIEL G. COHEN (P41735)
MARCUS L. MCCRAY (P84018)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, PLLC
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
T:  248.593.6400
F:  248.283.2925
thomas.paxton@ogletree.com
daniel.cohen@ogletree.com
marcus.mccray@ogletree.com

*Attorneys for Plaintiffs*

Dated:  January 31, 2022

## VERIFICATION

I, Jon Brach, being duly sworn, state as follows:

That I am the Operations Director of Caravan Facilities Management, LLC in the above action and have read the foregoing Plaintiff's Verified Complaint and Exhibits A through D attached thereto and know the contents thereof; that the same is true of my own personal knowledge except as to those statements made upon information and belief and as to those, I believe them to be true.

Jon Brach

Subscribed and sworn to before me
this 31st day of January, 2022

Notary Public

MARY E. TORTOMOSE
NOTARY PUBLIC, STATE OF MI
COUNTY OF MACOMB
MY COMMISSION EXPIRES Nov 6, 2025
ACTING IN COUNTY OF OAKLAND

50112551.2

21